IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID JOHN CALDER and JAMIE NORMAN GREIMAN,<br><br>Defendants.<br>_____/ | No. CR 04-00138 WHA<br><br>**ORDER REQUIRING AN *IN CAMERA*, *EX PARTE* HEARING ON THE MOTION TO REVEAL THE INFORMANT'S IDENTITY** |

## INTRODUCTION

In this case involving trafficking in gamma hydroxybutyrate (GHB), an illegal sedative, and one of its ingredients, gamma butryolactone (GBL), defendant Jamie Norman Greiman moves for an order requiring the government to disclose the identity of its informant and to produce him or her for an interview. The Court **ORDERS AN *IN CAMERA*, *EX PARTE* EVIDENTIARY HEARING** on whether the government is warranted in keeping the informant's identity secret. The motion to quash the search warrant and the request for a *Franks* hearing are held in abeyance pending the hearing.

## STATEMENT

Mr. Greiman placed four online orders through Vegan Soap Works for sodium hydroxide and pH strips, both of which can be used to make GHB.[1] These orders occurred

---

[1] The alkalinity/acidity of a substance is measured using the pH (potential of hydrogen) scale. The pH of GHB must be controlled to reduce the danger of ingesting the drug.

August 26, September 1, September 6 and October 26, all in 2002.  Using email accounts registered to him, Mr. Greiman requested delivery to his apartment at 1025 Bush Street (Tolliver Aff. for Search Warrant I at 3–5 (N.D. Cal. March 25, 2004), Br., Mot. to Quash Search Warrants; Req. for Evidentiary Hr'g, Exh. A).

Beginning October 2, 2003, or earlier, Mr. Greiman was the subject of an undercover investigation by the Drug Enforcement Administration (*ibid.*).  After Mr. Greiman ordered supplies from Vegan Soap Works, they actually were delivered by a DEA undercover agent on October 2 and 30, and November 13, 2003.  On October 30, the informant put Mr. Greiman in touch with a potential purchaser who was, in fact, a San Francisco undercover police officer.  The deal was consummated a week later.  On February 18, 2004, Mr. Greiman spoke by telephone with the informant, telling him or her that he had discovered that this customer was a police officer.  Mr. Greiman told the informant that he therefore preferred to communicate by Internet instant messenger, temporarily was halting receipt of GBL (which is also an illegal substance) and was keeping a low profile.  The confidential informant told DEA Special Agent Michael Tolliver about this conversation the next day (DEA, Report of Investigation, File No. R3-03-0122, Feb. 27, 2004, Opp., Mot. to Quash Search Warrants; Req. for Evidentiary Hr'g, Exh. 2).

The government plans to call the informant as a witness during its case-in-chief at trial and to disclose his or her name at least four days prior to the pretrial conference (Opp. 2).  *See* Crim. L.R. 17.1-1(b)(9) (schedule for witness-list exchange).  Mr. Greiman claims that sometime after that telephone conversation, the informant and the undercover officer made "failed attempts to conduct illegal drug transactions with Mr. Greiman" (Br. 4).

On March 25, 2004, Agent Tolliver filed an application and affidavit for a search warrant for Mr. Greiman's apartment at 1025 Bush Street in San Francisco.  He did not mention the February 18 or February 19 conversations in his application or affidavit (Tolliver Aff. I).  In addition to the instant motion, Mr. Greiman has moved to quash two search warrants on grounds that this and a later affidavit recklessly or intentionally omitted information about the February conversations in an attempt to create the false appearance that

2

1  contraband or evidence could be found in Mr. Greiman's apartment and his computer (*see*
2  Tolliver Aff. in Support of Search Warrant for computer (Tolliver Aff. II) (April 5, 2004), Br.,
3  Mot. to Quash Search Warrants and Req. for Evidentiary Hr'g, Exh. B).

**ANALYSIS**

The government expects to call the informant as a trial witness. If that plan holds, the prosecutors must disclose his or her identity no later than four days before the final pretrial conference. Crim. L.R. 17.1-1(b)(8) & (9). The pretrial conference and trial in the instant case have not been scheduled. This order, however, must consider whether disclosure should be made before then, if it should be made should the government decide not to call the informant as a witness after all or if there is no trial.

The government has a limited privilege to withhold a confidential informant's identity. *Roviaro v. United States*, 353 U.S. 53, 59–61 (1957). This privilege serves several important law-enforcement objectives, including encouraging people to supply the government with information about crimes. *McCray v. Illinois*, 386 U.S. 300, 308–09 (1967). When ruling on disclosure requests, a court therefore must balance the extent to which disclosure would be relevant and helpful to the defense against the government's interest in protecting the identity. *United States v. Spires*, 3 F. 3d 1234, 1238 (9th Cir. 1993).

The defendant bears the burden of showing the need for disclosure. He or she must show "more than a mere suspicion that the informant has information which will prove relevant and helpful or will be essential to a fair trial." *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993) (internal quotation marks omitted). The court must consider the "particular circumstances of each case," including "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. A motion to reveal an informant's identity may be denied when it is supported only by allegations of counsel that a particular defense is possible. *United States v. Mehciz*, 437 F.2d 145, 149 (9th Cir. 1971). A district court may hold an *in camera* hearing whenever a defendant makes a "minimal threshold showing that disclosure would be relevant to at least one defense." *Spires*, 3 F.3d at 1238 (internal quotation marks omitted). The

defendant and his attorneys may be excluded from such a hearing, to protect the informant's identity.[2]

Here, Mr. Greiman contends that revelation of the informant's identity is relevant to his defense and essential to a fair determination because the informant is "a percipient witness[] . . . who participated in events critical to the prosecution's case," including "supplying key ingredients used to manufacture the GHB." Mr. Greiman also claims the informant may have exculpatory information that Mr. Greiman told him he was stopping his drug business about a month before the first search warrant was executed. Mr. Greiman also contends that the informant has information bearing on whether there was probable cause for the search warrants.

Mr. Greiman claims that the confidential informant was an employee of Vegan Soap Works who supplied him with sodium hydroxide and pH strips (Br. 2). The only evidence on this point presented to the Court is a declaration by counsel for Mr. Greiman stating that the facts and statements in the opening brief are true (Bustamante Decl.). DEA agents intervened when Mr. Greiman placed orders with Vegan Soap Works. Instead of Vegan Soap Works delivering the products to Mr. Greiman, DEA Agent Alex Nocon did so (Tolliver Aff. I at 5–7). Clearly, some coordination took place between Vegan Soap Works and the DEA. The person with whom the DEA had contact at Vegan Soap Works was not identified in any document presented to this Court.

If the informant was an employee of Vegan Soap Works, his or her name is material to Mr. Greiman's defense. Such a person might know how Mr. Greiman acquired ingredients to make GHB and whether or not the purchases were for illegal or legal purposes, thus going to elements of the charged offenses. The government, however, asks that this name not be disclosed until, at the latest, four days before the final pretrial hearing because revelation

---

[2] Of course, additional rules apply if the name of the informant and his or her location is exculpatory. Disclosure of exculpatory material must be made in "sufficient time to permit [the] defendant to make effective use" of it, taking into account "the prosecutor's reasons for later disclosure" and whether the defendant has an opportunity to use the disclosed material. *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987). Sometimes, such exculpatory material includes witnesses names and locations. It is the prosecutor's duty to reveal such information at the proper time.

4

sooner would undermine the informant's usefulness in other narcotics investigations (Opp. 2). The government offers no details, such as whether the informant is involved in other cases or is still cooperating with the government.

The informant also gave Mr. Greiman the telephone number of a person who wanted to buy GHB from him. In fact, the customer was an undercover San Francisco police officer. Mr. Greiman allegedly sold this officer a gallon of GHB. The identity of the intermediary is material to preparing Mr. Greiman's defense. It may, for instance, allow his counsel to investigate an entrapment defense and issues of intent.

The confidential source also told the DEA that Mr. Greiman had discovered the true identity of the police officer who bought the GHB. The informant told the DEA that Mr. Greiman planned to maintain a low profile, cease accepting deliveries of GBL and communicate with the confidential source only by Internet instant messenger (DEA, Report of Investigation). This information also is material to Mr. Greiman's defense. The informant's statement that Mr. Greiman temporarily was stopping receipt of GBL goes to whether or not he ever trafficked in that controlled substance, which in turn bears on his ultimate guilt.

Mr. Greiman also contends that this informant may testify, contrary to the DEA report, that the defendant told him he was permanently stopping shipment of GBL, not simply imposing a temporary moratorium. Mr. Greiman claims that if he knew that the purchaser was an undercover police officer, he necessarily would have thought that the intermediary was cooperating with the government and therefore would have told him or her that he was permanently — not merely temporarily — stopping drug shipments (Br. 4). He claims that, if he said he would permanently halt GBL shipments, this information should have been included in the affidavit in support of the search warrants, and might eliminate probable cause. He also claims that a statement that he permanently was halting drug shipments would be exculpatory. Such a statement might be exculpatory, in that it would tend to negate that the drug-trafficking conspiracy continued into March 2004, as asserted in the superceding indictment.

Mr. Greiman makes one other claim: that sometime after the telephone conversation on February 18, 2004, the informant and the undercover officer made "failed attempts to conduct

5

1  illegal drug transactions" with him (Br. 4).  If this claim is true, it might aid Mr. Greiman in a
2  defense based on an entrapment theory.
3       Further evidence is necessary to determine whether or not the identity should be
4  privileged.  The Court needs to know more about the government's need for secrecy.  It also
5  needs to assess more thoroughly whether the name of the informant would be material to Mr.
6  Greiman's defense or essential to a fair trial.  *In camera* hearings are therefore justified.
7  Separate interviews, under oath and on a sealed transcript record, will be conducted of Agent
8  Tolliver and the confidential informant.  Such hearings will be held *ex parte*, with only judicial
9  staff, prosecutors and witnesses present, in order to protect the identity of the informant.
10 Defense counsel may submit no more than five pages of written questions per witness to the
11 Court and to opposing counsel by noon, January 13, 2006.  The Court will consider whether
12 and the extent to which to ask them.

### CONCLUSION

The Court **ORDERS AN *IN CAMERA*, *EX PARTE* EVIDENTIARY HEARING** to determine whether denial of the motion or delayed revelation is warranted.  The government **SHALL PRODUCE** at the hearing Agent Tolliver and the informant.  The timing and location of that hearing will be set forth in a separate, sealed order delivered only to the government.  The defense may submit questions, as described above.  The motion to quash the search warrants and the request for a *Franks* hearing are **HELD IN ABEYANCE** pending the hearing.

**IT IS SO ORDERED.**

Dated:  January 6, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE